In the Matter of EDWARD J. ROSE, an Attorney.

Second Department, June 17, 1921.

**Attorney and client — suspension of attorney for failure to pay over money to client.**

Attorney at law suspended from practice for six months where it appears that he retained money received in settlement of an action instituted by him in favor of his client and that the only claim of right to do so was that he was entitled to a part of said money as a counsel fee.

DISCIPLINARY proceedings instituted by the Brooklyn Bar Association.

*Mortimer W. Byers,* for the motion.

*Edward J. Rose,* in person, opposed.

MANNING, J.:

This is a disciplinary proceeding instituted by the Brooklyn Bar Association against the respondent, who is a practicing lawyer with an office in the borough of Brooklyn. He was admitted to the bar in the year 1912, and since that time has practiced his profession in the borough of Brooklyn. He was charged by the Bar Association with having been " guilty of fraud, deceit, malpractice and of conduct prejudicial to the administration of justice as defined in Section 88 of the Judiciary Law* of the State of New York," as follows:

" a. During the month of June of 1919, the respondent was the attorney for one John Kerstein, a resident of Springfield, Mass., and brought an action in the Municipal Court of the City of New York, on his behalf to recover damages for injuries sustained by the automobile of the said John Kerstein.

" b. That during the said month of June, 1919, the respondent settled the said action with the consent of his client for the sum of $175.00.   *   *   *

" d. That although frequently requested to deliver to the said John Kerstein so much of the said $175.00 as the respondent was not entitled to retain in payment of his services as attorney, the respondent has wholly failed, refused and neglected to pay any part of the said sum to the said John Kerstein."

---

* See Judiciary Law, § 88, subd. 2, as amd. by Laws of 1913, chap. 720. — [REP.

The charges against the respondent were duly referred to Hon. Edward B. Thomas, as official referee, who with painstaking care has written a very complete report regarding the charges made against the respondent; and has also stated very fully the excuses offered by the respondent for his alleged dereliction of duty.

It was the contention of the respondent upon the hearing before the learned official referee that the reason why the money was not paid to his client was that the client refused to carry out an agreement which the respondent said the client made with him, in reference to the amount of the respondent's charges. The substance of the respondent's claim was that out of the $175 so collected by him, he was justified in retaining the sum of $100, which he said was the agreed compensation that he was to receive under the arrangement made with his client.

Concerning this alleged agreement, the learned referee says: " His claim for $100 is not without some plausibility, and had he done nothing more than insist upon the retention of that sum under a claim of right, the present proceeding would not be justified. There is evidence presented by the petitioner tending to show that he agreed to do the work for a less sum, but in view of some correspondence such evidence is not probative of misconduct on the part of Rose, nor in itself does it indicate unprofessional conduct." And the referee further says: " Rose's fault, as I now consider it, is not that he retained $100, but rather that he impounded the entire $175, and devoted it to his own use without due effort to allow his client to have any part of it." The referee further says: " If in the case of the respondent it can be inferred that he was unconscious of the inherent gravity and quality of his act it is sufficient to note that his moral and mental perceptions should be so acute that he could feel and know the real nature of . the transgression. Otherwise he is not qualified to be trusted with the powers and duties that belong to the office of attorney of courts of justice. It is the failure of the respondent to appreciate this true aspect of the affair that has led him into his present difficulty, and brought the train of events so embarrassing to him and his client."

The learned referee also found that notwithstanding the

respondent's claim to have sent $100 of this money to his client, the fact was that he ·did not send any money. The respondent himself admitted that he feared to send the money, as such a fact might be used against him in the present proceeding. But he did, however, pay $75 during the pendency of the proceedings, and with the approval of the official referee. The respondent gave various excuses for not having paid the money over prior to the time that the Bar Association took action, and as to this the official referee says: " All this delay was not mere neglect, nor mere inertia, nor mere passivity, nor the result of absence, preoccupation, or forgetfulness in the absorption of other business. Much less was it a bold, straightforward, honest assertion of right to have a full and complete settlement before making any payment, an attitude pronounced, made known to the client, maintained bravely and uncompromisingly before the Bar Association, before the court and in this proceeding. Respondent found it convenient to use the money for a time and let its final payment await his ability or convenience to pay, indifferent to his troubled clients, to his breach of duty, to the accusation it merited, and the conclusion of grave fault it compelled." The referee concludes his report as follows: " I consider that the court should consult as to the punishment that would teach respondent and others similarly inclined that a client's money is not the attorney's property for any period of time, and that while an attorney is in no peril for demanding full compensation there must be no shadow upon his good faith." The evidence taken before the referee fully justifies the condemnation by him.

While the offense of this respondent is most serious, we hesitate, in view of the referee's report, to recommend disbarment. We think, however, that a suspension from practice is the proper disposition to be made of this matter.

The report of the official referee is, therefore, confirmed and the respondent is suspended from practice for the period of six months from the date of the entry of the order herein.

BLACKMAR, P. J., MILLS, RICH and KELLY, JJ., concur.

Motion to confirm report of official referee granted. The respondent is suspended from practice for a period of six months from the date of entry of the order herein.